UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**NIKKI FILICKY,**

      **Plaintiff,**                       Case No. 2:14-cv-2550
                                           JUDGE GREGORY L. FROST
     v.                                 Magistrate Judge Terence P. Kemp

**AMERICAN ENERGY - UTICA, LLC,**

      **Defendant.**

## OPINION AND ORDER

This matter is before the Court for consideration of Plaintiff's motion for summary judgment (ECF No. 8), Defendant's memorandum in opposition (ECF No. 10), and Plaintiff's reply memorandum (ECF No. 11). The Court **GRANTS** the motion.

### I. Background

Plaintiff, Nikki Filicky, is the owner of 168.24 acres in Belmont County, Ohio. On September 26, 2006, Plaintiff signed a five-year oil and gas lease with Solid Rock Energy, Inc., which assigned the lease to Marquette Exploration. On May 21, 2010, Plaintiff then signed an amendment with Marquette Exploration that extended the term of the existing lease to eight years. The lease was therefore set to expire on September 26, 2014. Later in 2010, Marquette Exploration then either changed its name or assigned the lease to Hess Ohio Resources, LLC ("Hess").

On February 26, 2014, Hess filed a declaration of pooled unit with the Belmont County

1

Recorder.[1]  This formed a pool of tracts into a 687.5-acre, 33-tract unit, known as Smith A Unit A ("Smith Unit"), on which Hess would drill a gas well.  A portion of Plaintiff's property is part of the Smith Unit.  On July 3, 2014, Hess assigned its interest in the Smith Unit and the well on that unit, Smith A 1H-12 ("Smith A well"), to Defendant, American Energy - Utica, LLC.  Then, on September 16, 2014, Defendant obtained a permit to drill a second well, the Eureka SMT BL 6H-A well ("Eureka 6H-A well").  Defendant is also constructing a third well.

Shortly before September 26, 2014, Defendant sent Plaintiff a $16,824.00 check.  This check indicated that it was for "rental" on the lease.  Plaintiff's counsel spoke with an employee for Defendant who purportedly explained that the check was to renew the underlying lease.  During discussions with counsel, the employee allegedly conceded that neither the lease nor its amendment allowed for such extension of the lease and that there had never been any oil or gas production from Plaintiff's leased property.  Accordingly, the employee purportedly said, the lease had expired, she would send counsel a release of the lease, and Plaintiff could enter into a new lease.  Defendant's employee denies making such statements.

In November 2014, Plaintiff filed a complaint in the Court of Common Pleas in Belmont County, Ohio.  (ECF No. 4.)  The four-count complaint seeks declaratory relief that the oil and gas lease has terminated and that Plaintiff's property is released from that lease.  Defendant removed the action to this Court in December 2014 (ECF No. 1), and Plaintiff subsequently filed

---

[1] The Sixth Circuit has explained that "pooling" is a term of art in the oil and gas industry that " 'refers to the aggregation of two or more tracts of land into a drilling unit of prescribed size.' " *Henry v. Chesapeake Appalachia, L.L.C.*, 739 F.3d 909, 910 n.1 (6th Cir. 2014) (quoting 6-9 William & Meyers, Oil and Gas Law § 901).  The court of appeals has also explained that "unitization," another term of art, " 'refers to the combination of most, if not all, of the separate tracts in the field into one tract so that the reservoir may be operated without regard to surface property lines.' " *Id.* (quoting 6-9 William & Meyers, Oil and Gas Law § 901).

a motion for summary judgment. (ECF No. 8.) The parties have completed briefing on the motion, which is ripe for disposition.

## II. Analysis

### A. Standard involved

Federal Rule of Civil Procedure 56 provides that summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court may therefore grant a motion for summary judgment if the nonmoving party who has the burden of proof at trial fails to make a showing sufficient to establish the existence of an element that is essential to that party's case. *See Muncie Power Prods., Inc. v. United Tech. Auto., Inc.*, 328 F.3d 870, 873 (6th Cir. 2003) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

In viewing the evidence, the Court must draw all reasonable inferences in favor of the nonmoving party, which must set forth specific facts showing that there is a genuine issue of material fact for trial. *Id*. (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)); *Hamad v. Woodcrest Condo. Ass'n*, 328 F.3d 224, 234 (6th Cir. 2003). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Muncie*, 328 F.3d at 873 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). Consequently, the central issue is " 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.' " *Hamad*, 328 F.3d at 234-35 (quoting *Anderson*, 477 U.S. at 251-52).

### B. Discussion

The amended lease involved in this case permits Defendant to pool, or combine, land in order to develop or operate an oil or gas well. The relevant provision of the 2010 amendment provides:

> d.     Pooling.  Paragraph 6 of the Lease is amended in its entirety by the substitution of the following paragraph in lieu of the paragraph originally contained in the Lease:
>
>> "Lessee hereby is given the right at its option, at any time within the primary term hereof or at any time during which this lease may be extended by any provision hereof, and from time to time within such period, to pool reform, enlarge and/or reduce such unit or pool, and repool all or any part or parts of leased premises, formation(s) or strata, and/or rights therewith with any other land in the vicinity thereof, or with any leasehold, operating, or other rights, formation(s) or strata, and/or interests in such other land so as to create units of such size and surface acreage as Lessee may desire but containing not more than eighty (80) acres for an oil well and not more than six hundred forty (640) acres for a gas well plus in each case a ten percent (10%) acreage tolerance. If at any time larger units are specified under any then applicable law, rule, regulation or order of any governmental authority for the drilling, completion or operation of a well, or for obtaining maximum allowable, any such unit may be established or enlarged to conform to the size authorized. Each unit or reformation thereof may be created by governmental authority or by Lessee recording in the county recorder's office a Declaration containing a description of the pooled acreage. Any well which is commenced, or is drilled, or is producing on any part of any land theretofore or thereafter so pooled shall, except for the payment of royalties, be considered a well commenced, drilled, and producing on leased premises under this lease. There shall be allocated to the portion of leased premises included in any such pooling or repooling such proportion of the actual production from all lands so pooled or repooled as such portion of leased premises, computed on an acreage basis, bears to the entire acreage of the lands so pooled or repooled. The production so allocated shall be considered for the purpose of payment or delivery of royalty to be the entire production from the portion of leased premises included in such pooling or repooling in the same manners as produced from such portion of leased premises under the terms of this lease. A unit established hereunder shall be valid and effective for all purposes of this lease even though there may be land, oil, and gas rights, royalty, and/or leasehold interests in land within the unit which are not pooled or unitized, or even though

4

> there may be a failure of the leasehold title (in whole or in part) to any tract or interest therein included in a pooled unit."

(ECF No. 8-2, at Page ID # 166-67.) Thus, the pooled acreage cannot exceed 80 acres for oil and 640 acres for gas. Read in conjunction with applicable original lease terms, this provision means that if oil or gas is produced from a properly pooled unit, the lease will remain in effect beyond its extended eight-year duration. If, however, oil or gas is not being produced from the pooled unit and Defendant is not engaged in drilling or reworking operations, then the lease expires.

Plaintiff seeks summary judgment on the narrow grounds that the lease amendment provision produced above does not operate to extend the lease because no valid pooled unit existed for the Eureka 6H-A well. In order to have her property be part of the pooled unit for that well, Plaintiff explains, Defendant had to file in the Belmont County Recorder's office a declaration that describes the relevant pooled unit and must have done so during the primary term of the lease. Plaintiff asserts that Defendant never filed such a declaration, despite the lease amendment language that "[e]ach unit or reformation thereof may be created . . . by Lessee recording in the county recorder's office a Declaration containing a description of the pooled acreage." (ECF No. 8-2, at Page ID # 166-67.) Consequently, Plaintiff contends that her property was not part of the unit that included the Eureka 6H-A well and that this means that the lease expired on September 26, 2014, the eight-year termination date of the lease.

Defendant argues that it recorded the only declaration needed, the Smith Unit declaration, and that this recorded declaration covers the Eureka 6H-A well so that the lease was properly extended. Defendant concludes that not only should this Court deny Plaintiff summary judgment, but the Court should also proceed to enter summary judgment for Defendant pursuant

5

to Federal Rule of Civil Procedure 56(f).

The Court begins its analysis with the creation of the Smith Unit and the Smith A well. Plaintiff has provided this Court with evidence indicating that the Smith Unit was comprised of 687.5 acres and that the Smith A well was never completed. Defendant's admissions render that well irrelevant. In its answer, Defendant admitted that the Smith A well was never completed and was never put into production. (ECF No. 2, at Page ID # 74 ¶ 1, admitting ECF No. 4, at Page ID # 80 ¶ 14 ("Based on records reported to the Ohio Department of Natural Resources, this 'Smith A Well' apparently was never fully completed and did not produce oil or gas in paying quantities before September 26, 2014.").) The "in paying quantities" language is of no importance here given a subsequent admission by Defendant in its answer. Plaintiff pled in paragraph 26 of the complaint that, "[c]uriously, America-Energy–Utica, LLC claimed that it had recently drilled the 'Eureka 6HA' well (API No. 34013208590000), and this was the well that kept the subject lease from expiring–not the Smith A Well associated with the Smith A Unit." (ECF No. 4, at Page ID # 82 ¶ 26.) In its answer, Defendant stated that it "admits the allegations in the paragraphs numbered 25 and 26 except to the extent paragraph 25 alleges that [Defendant] took 'a new position' and paragraph 26 includes editorial comment." (ECF No. 2, at Page ID # 75 ¶ 4.) The end result is that Defendant has expressly narrowed its reliance to the Eureka 6H-A well and not on the Smith A well.

Additional evidence submitted by Plaintiff indicates that the drilling permit application submitted to the Ohio Department of Natural Resources ("ODNR") for the Eureka 6H-A well did not mention the Smith Unit or the Smith A well. Instead, the unit map submitted to ODNR related to the Eureka 6H-A well did not match the declaration for the Smith Unit. (ECF No. 11-

6, at Page ID # 296.)  This is notable because the pooled unit disclosed as part of the drilling permit application is the relevant pooled unit.  *See* Ohio Rev. Code §§ 1509.05 & 1509.26.

The specific pooled unit identified for the drilling permit application for the Eureka 6H-A well was 692.298 acres, *larger than the Smith Unit declaration*, and included *more* of Plaintiff's property than was included in the Smith Unit declaration.  (ECF No. 11-4, at Page ID # 293.)  This is problematic for Defendant because although the Eureka 6H-A well is apparently located *within* the Smith Unit, the pooled tracts that relate to the Eureka 6H-A well extend *well beyond* the Smith Unit.  Defendant neither amended the Smith Unit nor filed a declaration of pooled unit with the Belmont County Recorder in regard to the pooled unit related to the Eureka 6H-A well.

Logic dictates that Defendant cannot shuffle tracts so that one declaration covers both the Smith Unit and the distinct pooled unit actually related to the Eureka 6H-A well.  Close enough is not good enough under the lease involved here, which requires a declaration to create each pooled unit.  Absent such a declaration, there was never a valid 692.298-acre pooled unit.

All of this means that a different pooled unit was involved with the Eureka 6H-A well than the Smith Unit, and Defendant never filed the requisite declaration for this new pooled unit with the county recorder as the lease amendment mandated.  Recognition of this mandate is a matter of basic lease interpretation.  The standard applicable to interpreting oil and gas leases under Ohio law is well settled, as the Sixth Circuit has explained:

> Under Ohio law, "contract interpretation is a question of law for determination by the court." *Textileather Corp. v. GenCorp Inc.*, 697 F.3d 378, 382 (6th Cir. 2012).  This court must determine the intent of the parties, which is presumed to reside in the contract's language.  *Savedoff v. Access Group, Inc.*, 524 F.3d 754, 763 (6th Cir. 2008).  "We must apply the plain language of the contract unless that language is ambiguous."  *Textileather*, 697 F.3d at 382.  "The meaning

of a contract is to be gathered from a consideration of all its parts, and no provision is to be wholly disregarded as inconsistent with other provisions unless no other reasonable construction is possible." *Karabin v. State Auto. Mut. Ins. Co.*, 10 Ohio St.3d 163, 462 N.E.2d 403, 406 (1984) (internal quotation marks and citation omitted). Leases are subject to the same rules of interpretation as other written agreements. *See Myers v. E. Ohio Gas Co.*, 51 Ohio St.2d 121, 364 N.E.2d 1369, 1372 (1977). "Ambiguity exists where 'the language is capable of two reasonable, but conflicting interpretations.' " *Dualite Sales & Serv., Inc. v. Moran Foods, Inc.*, 194 Fed. Appx. 284, 288 (6th Cir.2006) (unpublished) (citing *Wells v. Am. Elec. Power Co.*, 48 Ohio App.3d 95, 548 N.E.2d 995, 997 (1988)). "It is generally the role of the finder of fact to resolve ambiguity." *Westfield Ins. Co. v. Galatis*, 100 Ohio St.3d 216, 797 N.E.2d 1256, 1262 (2003).

*Henry*, 739 F.3d at 912. Applying these rules here, the Court finds that the relevant lease provisions, as amended, are not ambiguous. The lease amendment's specific declaration requirement is not ambiguous. It required Defendant to file with the Belmont County Recorder a declaration for any new or reformed pooled unit. The pooled unit associated with the Eureka 6H-A well, the only well on which Defendant bases its argument for a lease extension, may have encompassed parts or all of the Smith Unit, but the larger pooled unit was not the same as the Smith Unit. Defendant failed to file the required declaration for this larger, second pooled unit. As a result, the lease terminated on September 26, 2014.

### III. Conclusion

For the foregoing reasons, the Court **GRANTS** Plaintiff's motion for summary judgment. (ECF No. 8.) The Clerk shall enter judgment accordingly and terminate this case on the docket records of the United States District Court for the Southern District of Ohio, Eastern Division.

**IT IS SO ORDERED.**

      /s/ Gregory L. Frost     
GREGORY L. FROST
UNITED STATES DISTRICT JUDGE