UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

NIKKI FILICKY,

      Plaintiff,                              Case No. 2:14-cv-2550
                                            JUDGE GREGORY L. FROST
    v.                                     Magistrate Judge Terence P. Kemp

AMERICAN ENERGY - UTICA, LLC,

      Defendant.

**OPINION AND ORDER**

This matter is before the Court for consideration of Defendant's Motion to Set Aside Summary Judgment (ECF No. 37), Plaintiff's memorandum in opposition (ECF No. 38), and Defendant's reply memorandum (ECF No. 40). The Court **DENIES** the motion.

**I. Background**

Plaintiff, Nikki Filicky, is the owner of 168.24 acres in Belmont County, Ohio. On September 26, 2006, Plaintiff signed a five-year oil and gas lease with Solid Rock Energy, Inc., which assigned the lease to Marquette Exploration. On May 21, 2010, Plaintiff then signed an amendment with Marquette Exploration that extended the term of the existing lease to eight years. The lease was therefore set to expire on September 26, 2014. Later in 2010, Marquette Exploration then either changed its name or assigned the lease to Hess Ohio Resources, LLC ("Hess").

On February 26, 2014, Hess filed a declaration of pooled unit with the Belmont County

1

Recorder.[1] This formed a pool of tracts into a 687.5-acre, 33-tract unit, known as Smith A Unit A ("Smith Unit"), on which Hess would drill a gas well. A portion of Plaintiff's property is part of the Smith Unit. On July 3, 2014, Hess assigned its interest in the Smith Unit and the well on that unit, Smith A 1H-12 ("Smith A well"), to Defendant, American Energy - Utica, LLC. Then, on September 16, 2014, Defendant obtained a permit to drill a second well, the Eureka SMT BL 6H-A well ("Eureka 6H-A well"). Defendant is also constructing a third well.

Shortly before September 26, 2014, Defendant sent Plaintiff a $16,824.00 check. This check indicated that it was for "rental" on the lease. Plaintiff's counsel spoke with an employee for Defendant who purportedly explained that the check was to renew the underlying lease. During discussions with counsel, the employee allegedly conceded that neither the lease nor its amendment allowed for such extension of the lease and that there had never been any oil or gas production from Plaintiff's leased property. Accordingly, the employee purportedly said, the lease had expired, she would send counsel a release of the lease, and Plaintiff could enter into a new lease. Defendant's employee denies making such statements.

In November 2014, Plaintiff filed a complaint in the Court of Common Pleas in Belmont County, Ohio. (ECF No. 4.) The four-count complaint sought declaratory relief that the oil and gas lease had terminated and that Plaintiff's property was released from that lease. Defendant removed the action to this Court in December 2014 (ECF No. 1), and Plaintiff subsequently filed

---

[1] The Sixth Circuit has explained that "pooling" is a term of art in the oil and gas industry that " 'refers to the aggregation of two or more tracts of land into a drilling unit of prescribed size.' " *Henry v. Chesapeake Appalachia, L.L.C.*, 739 F.3d 909, 910 n.1 (6th Cir. 2014) (quoting 6-9 William & Meyers, Oil and Gas Law § 901). The court of appeals has also explained that "unitization," another term of art, " 'refers to the combination of most, if not all, of the separate tracts in the field into one tract so that the reservoir may be operated without regard to surface property lines.' " *Id.* (quoting 6-9 William & Meyers, Oil and Gas Law § 901).

2

a motion for summary judgment. (ECF No. 8.)

Briefing on the motion for summary judgment closed on January 16, 2015. Thereafter, on March 31, 2015, Defendant filed a document purporting to be an amended declaration of pooled unit with the Belmont County Recorder. The apparent purpose of this document was to "reform" a pool that previously applied to the Smith A well so that it applied to the Eureka 6H-A well, although Plaintiff argues that the actual effect was to form a new unit after the lease had already expired. Defendant did not inform the Court of this filing, and on July 2, 2015, this Court filed an Opinion and Order in which the Court determined that Plaintiff was entitled to summary judgment. (ECF No. 35.) Judgment was entered in favor of Plaintiff on that same day. (ECF No. 36.) On July 29, 2015, Defendant filed a motion to set aside that judgment pursuant to Federal Rule of Civil Procedure 59(e). (ECF No. 37.) The parties have completed briefing on the reconsideration motion, which is ripe for disposition.

## II. Analysis

### A. Standard involved

Under Rule 59(e), a district court possesses the power to alter or amend a judgment. The Sixth Circuit has explained that such "[m]otions to alter or amend [a] judgment may be granted if there is a clear error of law, newly discovered evidence, an intervening change in controlling law, or to prevent manifest injustice." *GenCorp, Inc. v. American Int'l Underwriters*, 178 F.3d 804, 834 (6th Cir. 1999) (internal citations omitted). *See also Perris v. Cuyahoga Cnty. Bd. Of Developmental Disabilities*, No. 14-3384, 2015 WL 4257178, at *2 (6th Cir. July 15, 2015).

### B. Discussion

The latest issue that this litigation places before the Court is simple: Can Defendant use

the March 31, 2015 amended declaration of pooled unit to have the Judgment set aside? The answer is no.

Defendant's creative, albeit ridiculous, argument is that the filing of the March 31, 2015 amended declaration of pooled unit satisfies the lease terms so as to extend the lease beyond September 26, 2014. To reach this conclusion, Defendant reasons that this Court never expressly held that there was a time limit in which to file such a document, that it does not matter that Defendant did not disclose the existence of the document to this Court until after entry of judgment, and that the document constitutes newly discovered evidence under Rule 59(3) because its existence did not become "known" until June 2015, too late to affect the initial consideration of the merits of this case. Defendant's argument fails for multiple reasons.

One such reason is that the March 31, 2015 amended declaration of pooled unit is simply not newly discovered evidence. The Sixth Circuit has explained that "[t]o constitute 'newly discovered evidence,' the evidence must have been previously unavailable." *GenCorp, Inc.*, 178 F.3d at 834. The court of appeals has also held that "a party may not introduce evidence for the first time in a motion for reconsideration where that evidence could have been presented earlier." *Bank of Ann Arbor v. Everest Nat'l Ins. Co.*, 563 F. App'x 473, 476 (6th Cir. 2014). The March 31, 2015 amended declaration of pooled unit was not unavailable prior to entry of judgment and Defendant is trying impermissibly to introduce it for the first time under Rule 59(e).

Unlike in *GenCorp*, the "new evidence" here may have existed before judgment was filed, but it is still true that "the changed fact is an event [Defendant] manufactured." *GenCorp, Inc.*, 178 F.3d at 834. Thus, as in *GenCorp*, "[a] decision to reopen this case would subvert the judicial imperative of bringing litigation to an end and would serve no need other than to correct

4

what has–in hindsight–turned out to be poor strategic decision by [Defendant]." *Id.*

It is disingenuous to argue that because Defendant's *counsel* apparently did not become aware of the March 31, 2015 amended declaration of pooled unit until June 25, 2015, the document is newly discovered evidence. Notably, Defendant created the document and filed it. *See Robbins v. Saturn Corp.*, 532 F. App'x 623, 632 (6th Cir. 2013) (Rule 59(e) case holding that a party's "late-filed affidavits do not constitute 'newly discovered evidence' because he had personal knowledge about his own activities that he could have submitted to the district court prior to the entry of summary judgment"). Defendant therefore cannot reasonably benefit from the fact that, at best, it appears Defendant failed to communicate with its own counsel. *See Sommer v. Davis*, 317 F.3d 686, 691 (6th Cir. 2003) (affirming denial of Rule 59(e) motion where movant provided no reason for why its own evidence was unavailable to it); *cf. CGH Transp. Inc. v. Quebecor World, Inc.*, 261 F. App'x 817, 824 (6th Cir. 2008) ("It is hard to imagine how an affidavit from one of [plaintiff's] own witnesses would have been previously unavailable to [plaintiff], and [plaintiff] has not explained why it failed to introduce this evidence in opposition to summary judgment."). Such circumstances do not overcome the Sixth Circuit's recognition that " '[a] district court does not abuse its discretion in denying a Rule 59 motion when it is premised on evidence that the party had in [its] control prior to the original entry of judgment.' " *Robbins*, 532 F. App'x at 632 (quoting *Emmons v. McLaughlin*, 874 F.2d 351, 358 (6th Cir. 1989)).

Additionally, the inexplicable lack of diligence in disclosing the March 31, 2015 amended declaration of pooled unit to this Court is also unhelpful to Defendant because Defendant's attempt at after-the-fact salvaging of its case runs afoul of the rule requiring that

Defendant acted with due diligence.  *See HDC, LLC v. City of Ann Arbor*, 675 F.3d 608, 615 (6th Cir. 2012) ("We conclude that because the developers have not shown that they exercised due diligence in obtaining the evidence, the district court did not err in denying the developers' motion to alter or amend the order.").  Defendant's counsel waited from June 25, 2015, to July 29, 2015, to notify this Court of the existence of the March 31, 2015 amended declaration of pooled unit.  Defendant explains that the document was discussed on June 25, 2015, at the deposition of John Gwynn.  Defendant then asserts that "before counsel for [Defendant] had the opportunity to seek leave of Court to file the Amended DPU for the Court's consideration, the Opinion and Order on summary judgment was issued one week later, on July 2, 2015."  (ECF No. 40, at Page ID # 507.)  This conclusory contention fails to explain what prevented counsel from acting more promptly.  It also fails to explain why Defendant could or should be excused from belatedly disclosing a document that Defendant filed on March 31, 2015.  This is dilatory conduct that hardly suggests due diligence.  Rather, it suggests sandbagging.

Even if the March 31, 2015 amended declaration of pooled unit could be regarded as newly discovered evidence, there is still no basis for granting the Rule 59(e) motion.  This is because the amended declaration of pooled unit was so untimely filed with the county recorder that it is irrelevant to the issues presented by this case.

In an attempt to counter the timing-of-filing hurdle, Defendant argues that, in its July 2, 2015 Opinion and Order, this Court did not recognize a time limitation on the filing of a declaration of pooled unit that would extend the lease.  This contention ignores that the Court held that "the lease terminated on September 26, 2014."  (ECF No. 35, at Page ID # 361.)  The analytic chain that led this Court to that conclusion implicitly recognized and credited that *the*

6

*filing of a proper declaration of pooled unit had to occur within the lease period to effectuate an extension.* This of course applies to reformations as well. The Court quoted at length the relevant provision of the 2010 amendment to the lease, which provides that "Lessee hereby is given the right at its option, at any time within the primary term hereof or at any time during which this lease may be extended by any provision hereof, and from time to time within such period" to create or reform pooled units. (*Id.* at Page ID # 357, quoting ECF No. 8-2, at Page ID # 166.) This provision establishes a time limit on the filing of a document creating or reforming a pooled unit. There is no lease provision either in the original or amended lease that gives Defendant the unbridled right to create or reform a pooled unit *after* the expiration of the lease.

The rationale for such conduct offered by Gwynn during his June 2015 deposition fails to help Defendant; he testified that Defendant could reform a pool after the primary term of the lease because the lease (written by Defendant) was ambiguous in that regard and there was no penalty set forth in the lease for doing so. The law does not give a contracting party such unusual rights by silence.

Moreover, Gwynn attempted to draw a curious distinction on Defendant's behalf when he testified as follows:

> Q. Okay. So now we're getting down to the brass tacks. The original declaration of pooled unit, can we both agree that had to occur during the primary term in order to include her in a unit at all; right?
> . . .
> A. Yes.
> Q. All right. All you're saying is that doesn't count for reformations though?
> A. Yes. That's what I'm saying.
> Q. All right. So when I go in front of Judge – or when we go in front of Judge Frost your defense is going to be that pooled units have to be declared and recorded within the primary term, but it doesn't count for the reformation?
>     That's what you're saying?
> . . .

7

      A.      Yes. I'm saying we can amend the unit as we see fit.
      Q.      At any time?
      A.      If the lease allows for it.
      Q.      Okay.
      A.      Which we believe this does.
      Q.      Even though this lease says within the primary term?
      A.      Correct.
      Q.      All right. And, again, to be absolutely clear on your last statement, what you just said, you would agree there's nothing in the lease itself that supports what you just said; right?
. . .
      A.      I'm not understanding.
      Q.      There's no – nothing actually written, no actual black and white terms, to support your contention that the duration within the primary term does not apply to reformations; true?
      A.      True.
. ... .
      A.      That is not written.

(ECF No. 38-1, at Page ID # 457-59 (objections omitted).) This distinction is wholly unsupported by the actual lease language. As Plaintiff correctly notes in her briefing on this issue, the Court has already held that the lease does not permit the shuffling upon which Defendant relies.

      A reading of the lease that would permit the behavior in which Defendant has engaged would be illogical and untenable. It would transform the lease involved here into one capable of potential revival and continuation for perhaps years after an expiration at Defendant's whim, which would transform the purported expiration date of the lease into an illusion. Such a bizarre construction of the lease would then run afoul of Ohio's policy of disfavoring no-term or perpetual oil and gas leases. There is no support in Ohio law for such nonsense.

### III.  Conclusion

The Court **DENIES**  Defendant's Motion to Set Aside Summary Judgment.  (ECF No. 37.)

**IT IS SO ORDERED.**

/s/ Gregory L. Frost
GREGORY L. FROST
UNITED STATES DISTRICT JUDGE
